STATE of Wisconsin, Plaintiff-Appellant,

v.

Robert W. NORDNESS, Defendant-Respondent-Petitioner.

Supreme Court

*No. 84–871–CR. Argued January 8, 1986.—Decided February 11, 1986.*

(Also reported in 381 N.W.2d 300.)

For the defendant-respondent-petitioner there was a brief by *Larry A. Haukom* and *Haukom & Ritchie,* Madison, and oral argument by *Larry A. Haukom.*

For the plaintiff-appellant the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J. In this case we review an unpublished decision of the court of appeals filed February 14, 1985. The court of appeals reversed an order of the circuit court entered pursuant to sec. 343.305(8)(b), Stats., which would have prohibited the revocation of Robert W. Nordness's driving privileges as a result of his refusal to submit to a chemical analysis for intoxication. The hearing was held in the circuit court for Dane county, W. L. Jackman, reserve judge. We affirm the decision of the court of appeals.

The issue is whether the circuit court erred in holding that the state failed to prove to a reasonable certainty that Robert W. Nordness was the actual driver of the car which a police officer had stopped under suspicion of the driver's intoxication. More specifically, we address whether the issues at a revocation hearing are strictly limited to those delineated in sec. 343.305(3)(b)5, Stats., or whether a threshold test must first be met, namely, whether the person charged with refusal to submit to chemical testing was in fact the driver of the motor vehicle. We hold that the issues to be addressed at a revocation hearing are strictly limited to those enumerated in the statute; the trial court erred in considering evidence and in holding that the state did not establish to a reasonable certainty that Nordness was the actual driver of the motor vehicle stopped by the police officer. We also determine that the defendant's due process rights were not violated and that the arresting police officer had probable cause to believe that the defendant was operating a motor vehicle while intoxicated.

On September 14, 1983 Robert Nordness was arrested for operating a motor vehicle while under the

influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats.[1] The police officer making the arrest requested that Nordness take a breathalyzer test.[2] When Nordness refused to take the test, the police officer issued to him a notice of intent to revoke his operator's license. Nordness subsequently requested a hearing on the revocation under sec. 343.305(3)(b)4.[3]

Circuit Judge P. Charles Jones, prior to the revocation hearing, ruled in favor of defendant's motion that he be permitted to present witnesses to prove that he was not the driver of the vehicle at the time of the al-

---

[1] That section provides:

"**346.63 Operating under influence of intoxicant or other drug.** (1) No person may drive or operate a motor vehicle while:

"(a) Under the influence of an intoxicant or a controlled substance or a combination of an intoxicant and a controlled substance, under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving."

[2] Section 343.305(2)(b) authorizes a police officer to make such a request:

"**343.305 Refusal to submit to chemical tests. . . .**

"(2)(b) A law enforcement officer may, upon arrest of a person for violation of s. 346.63(1) or a local ordinance in conformity therewith, or for a violation of s. 346.63(2) or 940.25, or s. 940.09 where the offense involved the use of a vehicle, request the person to provide one or more samples of his or her breath, blood or urine. . . ."

[3] "[A] person may request a hearing on the revocation within 10 days [of the notice of intent to revoke] by mailing or delivering a written request to the court whose address is specified in the notice. If no request for a hearing is received within the 10-day period, the revocation period commences 30 days after notice is issued." Section 343.305(3)(b)4, Stats.

leged offense. In a memorandum decision, the circuit court stated that the threshold question in determining whether a driver refused to take a breath or blood test is whether that person was, in fact, the driver.

At the revocation hearing before Reserve Judge W. L. Jackman, the arresting state patrol officer testified that, at about 11:00 p.m. as he was sitting in his squad car facing south at a stop sign at a T intersection, he saw a vehicle approaching from the west and weaving in the roadway. The officer stated that when the vehicle entered the intersection, the headlights of his patrol car illuminated the driver sufficiently such that he recognized the driver as the defendant. He testified that he had seen the defendant on at least three or four previous occasions at a local service station. As the driver executed a left turn in front of the officer, the officer turned his head and saw the defendant again, from a distance of about five feet.

According to the officer, the defendant continued driving along the highway and began to accelerate. As he did, the officer turned around, turned on his red lights and siren, and pursued the defendant. After about three-tenths of a mile, the defendant turned into a driveway. The officer followed him into the driveway, stopping his squad car a few feet behind the defendant's vehicle and off to its left side. The officer had his high beam headlights on and pointed his vehicle's spotlight at the driver, who got out of his car and began running toward his house. The officer, who testified that the defendant was alone in his vehicle, again recognized the person as Nordness. He started to pursue Nordness and shouted at him to stop. The driver turned around, mumbled something unintelligible to

the officer, and then continued running to the back of a house into which the officer believed Nordness fled. The officer had his flashlight shining on him when the driver was mumbling; the two were about twenty feet apart from each other at that point.

The officer then radioed for backup help. Over a loudspeaker, the officer ordered the defendant to come out of the house. After no initial response, the police officer radioed the dispatcher to telephone the residence to request that the defendant exit the house. After two telephone contacts, Theresa Johnson, a woman with whom the defendant lived, exited the house. She claimed that she had been driving the car in question and that the defendant had been home asleep. The officer, who knew Theresa was not the driver because he recognized her as an employee at the same service station where he had seen Nordness, asked her to get Nordness. When the defendant finally arrived, the officer recognized him as the driver of the vehicle and detected a strong odor of intoxicants on his breath. He noted that the defendant was having trouble with his balance and was slurring his speech. His eyes were bloodshot. After the defendant failed a field sobriety test, he was placed under arrest for operating a motor vehicle while intoxicated. The officer then proceeded with requesting Nordness to submit to a chemical test. The defendant refused to submit to the test.

The defendant and Theresa Johnson testified at the hearing that Theresa Johnson was driving the car which the officer had pursued. Johnson testified that she was returning from Nordness's father's farm. She stated the vehicle weaved when travelling because it previously had been in an accident. She claimed she did

not stop when she saw the officer's red flashing lights because she did not know that the officer was after her. The defendant testified that he was home in bed when the incident between Ms. Johnson and the officer occurred. The defendant's uncle testified that Nordness left a local bar sometime before 10:00 p.m. that night. The defendant's father corroborated Theresa Johnson's testimony that she drove the defendant's automobile to his farm that evening and left about 11:00 p.m. The record indicates that two of the alibi witnesses—the defendant's uncle and the defendant's father—were not present at the time the officer made his arrest, and, therefore, they provided no information to the officer at that time.

At the end of the testimony, the trial court concluded that the officer "may have mistaken [Theresa Johnson] for the defendant." The court then dismissed the claim of refusal because the state had not, "even to the point of proving the case to a reasonable certainty," shown that the defendant was the driver of the car.

The state appealed. In a single-judge opinion by Judge Michael T. Sullivan, the court of appeals determined that sec. 343.305(3)(b)5, Stats., clearly defines the issues to be decided at a revocation hearing; whether the defendant actually was the driver of the vehicle is not one of those issues. Because the parties stipulated to all other issues, the only proper matter to be determined at the revocation hearing was whether the officer had probable cause to arrest the defendant. However, the focus of the probable cause issue was the identity of the driver, the court of appeals noted. It rejected the standard of proof adopted by the trial court—reasonable certainty—and said that the

state merely needed to show that the officer had probable cause. The court of appeals reversed the order dismissing the refusal charge and remanded for further proceedings.

The defendant now seeks review in this court. He first argues that sec. 343.305, Stats., must include a defendant's right to present evidence that he was not the actual driver of the car as a threshold determination to whether probable cause existed. We reject the argument that sec. 343.305(3)(b)5 encompasses anything more than the issues listed within that subsection.

## ISSUES WITHIN A SECTION 343.305(3)(b)5 HEARING

The question before this court involves interpretation and application of sec. 343.305(3)(b)5, Stats. The construction of a statute in relation to a given set of facts is a question of law. *State v. Clausen,* 105 Wis. 2d 231, 243, 313 N.W.2d 819 (1982). This court may decide questions of law independently, without deference to the decisions of the trial court and the court of appeals. *Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

Section 343.305, Stats., known as the implied consent law, states that any person who drives or operates a motor vehicle upon the public highways of this state is deemed to have given his consent for chemical testing when requested to do so by a law enforcement offi-

cer.[4] A law enforcement officer may request a person to submit to testing upon his arrest for operating a motor vehicle while under the influence of an intoxicant. Section 343.305(2)(b). The officer must inform the arrestee of the arrestee's implied consent to a test; that if the arrestee refuses the test his license shall be revoked; and that the arrestee may have an additional test performed. Section 343.305(3)(a)1–3.

Subsequent to his arrest and after he had received notice of the state's intent to revoke his driver's license, Nordness requested a hearing, pursuant to Sec. 343.305(3)(b)4, Stats.

The issues to be addressed at the revocation hearing are described in Sec. 343.305(3)(b)5:

"[T]he issues of the hearing are limited to:

"a. Whether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol . . . to

---

[4] Section 343.305(1), Stats., provides:

"Any person who drives or operates a motor vehicle upon the public highways of this state, or in those areas enumerated in s. 346.61, shall be deemed to have given consent to one or more tests of his or her breath, blood or urine, for the purpose of determining the presence or quantity in his or her blood or breath, of alcohol or controlled substances or a combination of alcohol and controlled substances when requested to do so by a law enforcement officer under sub. (2). Any such tests shall be administered upon the request of a law enforcement officer. The law enforcement agency by which the officer is employed shall be prepared to administer, either at its agency or any other agency or facility, 2 of the 3 tests under sub. (2) (b), and may designate which of the tests shall be administered first."

a degree which renders him or her incapable of safely driving or having a blood alcohol concentration of 0.1% or more and whether the person was lawfully placed under arrest for violation of s. 346.63(1) or a local ordinance in conformity therewith or s. 346.63(2), 940.09 or 940.25.

"b. Whether the officer complied with par. (a).

"c. Whether the person refused to permit the test.

"d. The person shall be deemed not to have refused the test if it is shown by a preponderance of evidence that the refusal was due to a physical inability to submit to the test due to a physical disability or disease unrelated to the use of alcohol, controlled substances or other drugs."

We find the language of this subdivision of the statute to be clear and unambiguous; there is no need to look outside the statute to determine legislative intent. *Wis. Elec. Power Co. v. Public Service Comm.,* 110 Wis. 2d 530, 534, 329 N.W.2d 178 (1983).

There is no mention in this subsection of a threshold issue of whether the defendant was actually the driver of the car. Based on the language of the statute, we find that the issues at a revocation hearing are limited to the four listed. Because of a stipulation entered into between the state and Nordness at the hearing, the only issue which should have been addressed at the hearing was whether the arresting officer had probable cause to believe the defendant was driving a motor vehicle while under the influence of alcohol. Section 343.305(3)(b)5a, Stats. The circuit court, through its prehearing order and admission of defendant's alibi

witnesses, impermissibly broadened the revocation hearing's scope to consider the issue of whether the defendant was the actual driver of the car. The plain language of the statute clearly does not allow for this fifth issue; the circuit court erred in ruling on a threshold issue of whether Nordness was the actual driver of the car.[5]

The defendant next argues that, based on a reading of the entire implied consent statute, a threshold determination that he was the actual driver of the vehicle must be made before his license may be revoked. He states that the legislature intended to have the penalties associated with Sec. 343.305, Stats., apply only to those who are actually operating a motor vehicle. To support this argument, Nordness quotes language from sec. 343.305(1): *"Any person who drives* or operates a motor vehicle upon the public highways of this state

---

[5] The court of appeals correctly noted that the reasonableness of a refusal to submit to testing is no longer an issue at a revocation hearing. *City of Prairie du Chien v. Evans,* 100 Wis. 2d 358, 359 n. 2, 302 N.W.2d 61 (Ct. App. 1981). *Contra,* sec. 343.305(2)(b)5, (7)(c), Stats. 1975. Although Nordness's refusal to submit to testing because he was not the driver might have been a question of reasonableness prior to the repealing and recreation of sec. 343.305 by 1977 Wis. Laws ch. 193, sec. 7, there is no room for such a defense under the present statute. The elimination of reasonableness as an issue at a revocation hearing reflects the purpose of the statute to facilitate the identification and removal of intoxicated drivers from the public highways. *See, State v. Neitzel,* 95 Wis. 2d 191, 193, 289 N.W.2d 828 (1980). "In light of that purpose, it must be liberally construed to effectuate its policies." *Scales v. State,* 64 Wis. 2d 485, 494, 219 N.W.2d 286 (1974).

. . . shall be deemed to have given consent to one or more tests. . . ." (Emphasis added.)

We disagree that the above-quoted language establishes legislative intent necessitating an "actual driver" finding prior to inquiring into the sec. 343.305(3)(b)5 issues. Subsection (1) merely declares legislative policy, namely, that those who drive consent to chemical testing. The remainder of the statute outlines the procedures to be used for implementing this policy. For example, a person who has been arrested for driving while under the influence of an intoxicant may be requested to submit to testing. Section 343.305(2)(b). The arrestee may, prior to the license revocation, request a hearing on the revocation. Section 343.305(3)(b)4. But the issues in that hearing are specifically limited to: (1) whether the officer had probable cause to believe the person was driving under the influence of alcohol; (2) whether the officer complied with the informational provisions of Sec. 343.305(3)(a); (3) whether the person refused to permit the test; and (4) whether the refusal to submit to the test was due to a physical inability. Section 343.305(3)(b)5. Again, because the parties stipulated to the other three issues, all that was left for the trial court to determine was whether the officer had probable cause to believe the defendant was driving while under the influence of alcohol. There is no legislatively intended, statutorily imposed threshold test that the defendant actually be the driver of the stopped car.

Nor is there any conceptual nexus between finding the defendant to be the actual driver and finding probable cause. It is not necessary to find that the defendant was the actual driver in order to find that the police

officer had probable cause to believe he was driving while under the influence of alcohol. To paraphrase a statement made in defendant's brief: Probable cause may exist in the law even when the actual fact does not. Only the determination of probable cause is an issue to be addressed in a revocation hearing; the determination of whether a defendant was the actual driver is not an issue, nor is it material to the inquiry of whether probable cause existed.

There were no statutory grounds for the trial court to have created a threshold issue of whether the defendant was the actual driver of the car stopped by the state trooper. The issues at the revocation hearing are limited to those stated in sec. 343.305(3)(b)5, Stats.

## DUE PROCESS ANALYSIS

The defendant next asserts that, if he is denied the opportunity to present evidence that he was not the actual operator of the motor vehicle, he will be denied due process of law, because he effectively would be denied a forum in which to defend himself. We disagree and determine that the issues as listed within sec. 343.305(3)(b)5, Stats., do not infringe upon Nordness's due process rights.

Nordness states that if he is not allowed to present evidence that he was not the driver of the stopped vehicle, his and other drivers' operating licenses will be revoked whenever there is a finding of probable cause, even if a given person indeed was not the driver of the car. A person would have no forum in which to defend himself against the license revocation; that is, he would have no forum in which to assert that he was not the

29

actual driver of the car. Certainly being denied a forum in which to defend oneself amounts to being deprived of due process of law, Nordness reasons.

■

There is no question that the revocation of a driver's license for a statutorily defined purpose is a protectible property interest which implicates due process protections. *Illinois v. Batchelder,* 463 U.S. 1112, 1116–17 (1983). The only remaining inquiry is to determine " 'what process is due to protect against an erroneous deprivation of that interest.' " *Id.* (quoting from *Mackey v. Montrym,* 443 U.S. 1, 10 (1979)). The U.S. Supreme Court has identified three factors to be balanced in considering what process is due:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).

In *Batchelder,* a person who was arrested for driving while under the influence of an intoxicant moved to dismiss the arresting officer's affidavit on the ground that it did not state any fact which would show that the person was intoxicated at the time of his arrest. *Batchelder,* 463 U.S. at 1115. The affidavit merely stated in conclusive fashion that the officer had reasonable cause to believe that the person was driving while intoxicated in that the car was moving too fast with pe-

destrians present and that it entered an intersection without slowing down. *Id.* at 1114–15. Under Illinois law, the arresting officer had to file a sworn statement that he " 'had reasonable cause to believe the person was driving the motor vehicle . . . while under the influence of intoxicating liquor. . . .' " *Id.* at 1113 (quoting from Ill. Rev. Stat., ch. 95-1/2, ¶ 11–501.1 (1981)).

The Supreme Court, in upholding the constitutionality of the officer's sworn statement, determined that the Illinois implied consent statute afforded Batchelder all the process to which he was due. In so holding, the Court first considered the *Eldridge* factors.

The Supreme Court determined that the focus of the first factor—the private interest affected—must be on the duration of any potentially wrongful deprivation of the property interest. *Batchelder,* 463 U.S. at 1117. The Court concluded that because the Illinois statute granted a defendant the right to a hearing *before* his license was suspended, the first factor of the *Eldridge* analysis does not balance in the defendant's favor regarding his assertion that due process was not followed. Similarly, the Supreme Court determined that a *predeprivation* hearing "abundantly weights this second part of the *Eldridge* analysis in favor" of the constitutionality of the Illinois statute. *Id.* at 1118. A predeprivation hearing minimizes the chance of an erroneous deprivation of a license. The procedures used to prevent against an erroneous deprivation need not be so comprehensive as to preclude any possibility of error. *Mackey v. Montrym,* 443 U.S. 1, 13 (1979).

Finally, the Court found that the government's interest in depriving the drunk driver of permission to operate an automobile is very strong. It concluded:

"That interest is substantially served by the procedures outlined in [the Illinois implied consent statute]." *Batchelder,* 463 U.S. at 1118.

We note that the procedures of the Illinois implied consent statute are substantially similar to this jurisdiction's in terms of a predeprivation hearing and in terms of the issues to be decided at such a hearing:

> " 'Such hearing shall proceed in the Court in the same manner as other civil proceedings, except that the scope of such proceedings shall cover only the issues of whether the person was placed under arrest for [driving while intoxicated], whether the arresting officer had reasonable grounds to believe that such person was driving while under the influence of intoxicating liquor, whether the person was informed orally and in writing as provided in paragraph (a) that his privilege to operate a motor vehicle would be suspended if he refused to submit to and complete the test and whether, after being so advised, he refused to submit to and complete the test upon request of the officer.' " *Batchelder,* 463 U.S. at 1114 (quoting Ill. Rev. Stat., ch. 95-1/2, ¶11–501.1 (1981)).

Given the facts of the case before us, we conclude that the due process analysis of *Batchelder* is appropriate. We hold that the hearing as established by sec. 343.305(3)(b)4, 5, Stats., provided Nordness with all the constitutional process to which he was due. Although Nordness has a significant property interest in the revocation of his license, he was extended a predeprivation hearing to guard against the possibility of erroneous deprivation of that interest. Again, the procedures used to protect against an erroneous deprivation need

not be so complete and thorough that no possibility of error exists. *Mackey,* 443 U.S. at 13.

We recognize that this state has a significant interest in keeping its highways safe for public use. The Supreme Court also has duly noted this interest by commenting on the carnage caused by drunk drivers. *See, e.g., South Dakota v. Neville,* 459 U.S. 553, 558 (1983). This state interest is served by the purpose of the implied consent law, which is to obtain the blood alcohol content in order to obtain evidence to prosecute drunk drivers. *State v. Brooks,* 113 Wis. 2d 347, 355, 335 N.W.2d 354 (1983); *State v. Pawlow,* 98 Wis. 2d 703, 298 N.W.2d 220 (Ct. App. 1980). The state's interest of keeping the highways safe is best served when those who drive while intoxicated are prosecuted and others are thereby deterred from driving while intoxicated. *Brooks,* 113 Wis. 2d at 355. The procedures for implementing the state's interest in highway safety do not violate Nordness's procedural due process rights.

Drunk driving is indiscriminate in the personal tragedy of death, injury, and suffering it levies on its victims. It may transform an innocent user of a highway into a victim at any time—with no advance notice and no opportunity to be heard. It is a tragedy where the intoxicated driver and the victim are often unwittingly the same person.

It is also a scourge on society: drunk driving exacts a heavy toll in terms of increased health care and insurance costs, diminished economic resources, and lost worker productivity. It is an affliction which produces no offsetting human or economic benefits; it engenders no positive human or economic incentive. It destroys

and demoralizes personal lives and shocks society's conscience. It has no legitimate place in our society.

The state, in part through the implied consent law, has endeavored to quash the effects of drunk driving. It has a legitimate interest to do so. We give considerable weight to the state's interest as long as the means it employs are within statutory bounds and do not violate due process rights. To require a person to submit to chemical testing where an officer has probable cause to believe that the person was driving while under the influence of an intoxicant is a small inconvenience to an individual in comparison to the worthy benefits of the implied consent law.

It is no defense for Nordness to show in a revocation hearing that he was not the actual driver of the stopped car. Simply because the legislature has denied him this defense by limiting the issues at a revocation hearing does not deny him his due process rights. Nordness still has that defense available to him in the underlying prosecution for his driving while under the influence of an intoxicant. Should the legislature desire to broaden the scope of a revocation hearing, it certainly has that ability.

Procedural due process requires that the state afford Nordness notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *In Interest of S.D.R.,* 109 Wis. 2d 567, 572, 326 N.W.2d 762 (1982). Nordness was extended a prerevocation hearing and was extended the general opportunity to present evidence and cross-examine the arresting officer. Restricting the scope of a revocation hearing to the issues listed in sec. 343.305(3)(b)5 does not deprive him of due process.

## PROBABLE CAUSE

We next address the determination by the court of appeals that the state needs only to establish probable cause in a revocation hearing, not probable cause to a reasonable certainty, as the trial court intimated. We affirm the court of appeals; the state must only present evidence sufficient to establish an officer's probable cause to believe the person was driving or operating a motor vehicle while under the influence of an intoxicant. Section 343.305(3)(b)5a, Stats. No more is required.

Probable cause, although not easily reducible to a stringent, mechanical definition, *State v. Welsh,* 108 Wis. 2d 319, 329, 321 N.W.2d 245 (1982), *reversed on other grounds,* 104 S. Ct. 2091 (1984), generally refers to " 'that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime.' " *Id.* (quoting from *State v. Paszek,* 50 Wis. 2d 619, 624, 184 N.W.2d 836 (1971)). Probable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe, in this case, that the defendant was operating a motor vehicle while under the influence of an intoxicant. *See, Welsh,* 108 Wis. 2d at 329–30. "The evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not." *Id.* at 329.

We deem the evidentiary scope of a revocation hearing to be narrow. In terms of the probable cause

issue, the trial court in a revocation hearing is statutorily required merely to determine that probable cause existed for the officer's belief of driving while intoxicated.

We view the revocation hearing as a determination merely of an officer's probable cause, not as a forum to weigh the state's and the defendant's evidence. Because the implied consent statute limits the revocation hearing to a determination of probable cause—as opposed to a determination of probable cause to a reasonable certainty—we do not allow the trial court to weigh the evidence between the parties. The trial court, in terms of the probable cause inquiry, simply must ascertain the plausibility of a police officer's account. *See, e.g., Vigil v. State,* 76 Wis. 2d 133, 144, 250 N.W.2d 378 (1977).

In this case, the trial court never made a determination of probable cause because it held the state had not met its threshold burden of showing to a reasonable certainty that Nordness was the driver of the car stopped. Because the record does not include findings of fact by the trial court, we will examine the factual record *ab initio* and determine, as a matter of law, whether the evidence constitutes probable cause. *State v. Dunn,* 121 Wis. 2d 389, 399, 359 N.W.2d 151 (1984); *State v. Williams,* 104 Wis. 2d 15, 22, 310 N.W.2d 601 (1981).

A review of the record indicates that under the totality of the circumstances and based on all of the facts available to the arresting officer at the time of arrest, a reasonable officer would believe that the defendant was driving the vehicle while under the influence of an

intoxicant. First, the officer saw the car weaving as it approached the intersection at which he was stopped. As the car entered the intersection, the officer, from a distance of twenty feet, recognized the driver as Nordness, whom he had seen in a local gas station on three or four occasions. Second, as the car took a left turn in front of the officer's vehicle, the officer again recognized the driver as Nordness, this time at a distance of less than five feet. Third, in Nordness's driveway with the high beams and the officer's spotlight in use, the officer again recognized the driver as Nordness. Fourth, the driver of the vehicle eluded the officer upon a command to stop and then disappeared into a house. Fifth, when a woman came to the door who claimed to be the driver, the arresting officer recognized her, knew her on a first-name basis, and realized that she was not the driver. Sixth, once the defendant arrived from within the house, the arresting officer noticed the odor of intoxicants on his person. His eyes were bloodshot. The defendant was slurring his speech and failed a field sobriety test.

In sum, measuring the officer's conduct on an objective standard and considering the totality of the circumstances at the time of the arrest, a reasonable officer could conclude that there was probable cause to believe the defendant was driving while under the influence of an intoxicant.[6]

---

[6] The testimony of two of the alibi witnesses for the defendant, namely, Nordness's father and Nordness's uncle, was irrelevant to the determination of probable cause. Only evidence which speaks to the facts and circumstances available to the officer at the time of arrest is relevant to a determination of probable cause in a revocation hearing. *See, e.g., State v. Cheers,* 102 Wis. 2d 367, 388, 306

We conclude that there is no "actual driver" threshold test which the state must satisfy before the issues of sec. 343.305(3)(b)5, Stats., are addressed; subsections a–d constitute the only issues to be addressed within a revocation hearing. The scope of the revocation hearing does not constitute a violation of Nordness's due process rights. The state need only demonstrate that the arresting officer had probable cause for his belief that the defendant was driving under the influence of an intoxicant.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for entry of an order consistent with this opinion.

■

N.W.2d 676 (1981). The testimony of these two alibi witnesses was outside the officer's knowledge at the time of arrest. However, the testimony of Nordness and Johnson was relevant to the issue of probable cause, because the occurrences underlying their respective testimony were within the knowledge of the police officer at the time of the arrest. The trial court need only determine a plausible account of the occurrence which would support a finding of probable cause. *Vigil v. State,* 76 Wis. 2d 133.