COURT OF APPEALS
DECISION
DATED AND FILED

August 3, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP73-CR**

Cir. Ct. No. **2019CT180**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

ANDREW AUSTIN KEENAN-BECHT,

  DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Fond du Lac County: PAUL G. CZISNY, Judge. *Affirmed.*

¶1 GROGAN, J.[1] Andrew Austin Keenan-Becht appeals from a judgment entered after a jury found him guilty of operating a motor vehicle with a

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

prohibited alcohol concentration contrary to WIS. STAT. §§ 346.63(1)(b) and 346.65(2)(am)2.[2] His challenge on appeal is to the circuit court's denial of his suppression motion.[3] Keenan-Becht asserts that the police officer lacked probable cause to arrest him for operating a motor vehicle while under the influence of an intoxicant. This court affirms.

## I. BACKGROUND

¶2      In February 2019, at about 2:00 a.m., former Wisconsin State Trooper Matthew Ackley observed Keenan-Becht speeding and conducted a traffic stop. The officer did not notice Keenan-Becht's vehicle swerving or any issues with it while it was pulling over and stopping. When Ackley approached the vehicle, he immediately noticed that Keenan-Becht had "watery and red eyes and the odor of intoxicating beverage[s] coming from inside the vehicle." He asked Keenan-Becht to step out of the vehicle as there were two additional occupants in it. Keenan-Becht complied with the request, and the officer determined the odor was coming from Keenan-Becht, who admitted he had come from a bar where he had consumed "two beers." Keenan-Becht agreed to perform field sobriety tests and told the officer he had a prior OWI.

¶3      The horizontal gaze nystagmus (HGN) test resulted in showing four of six clues that indicated intoxication, and Ackley testified that four clues on the

---

[2] Specifically, the State alleged Keenan-Becht "did operate a motor vehicle with a prohibited alcohol concentration of 0.08 or more, to-wit:  did have a blood alcohol level of .087[.]" The jury found Keenan-Becht not guilty of operating a motor vehicle while intoxicated, second offense.

[3] The Honorable Robert J. Wirtz presided over the suppression hearing and decided the pre-trial motions. The Honorable Paul G. Czisny presided over the trial and entered the judgment.

HGN test is enough for an arrest. The walk-and-turn and one-leg stand tests each showed only one clue of impairment. Ackley testified that a minimum of two clues on either of those two tests is needed to make an arrest. Ackley did not notice any slurred speech and confirmed Keenan-Becht produced his driver's license without difficulty.

¶4 After the field sobriety tests, Ackley believed he had probable cause to arrest Keenan-Becht, but before arresting him, Ackley had Keenan-Becht take a preliminary breath test (PBT). After the PBT, which registered as .091, Ackley arrested Keenan-Becht, and an evidentiary test of his blood showed his blood alcohol concentration (BAC) at .087.

¶5 The State charged Keenan-Becht with two counts: (1) operating a motor vehicle while intoxicated (OWI), second offense, contrary to WIS. STAT. §§ 346.63(1)(a) and 346.65(2)(am)2; and (2) operating with a prohibited alcohol concentration, second offense, contrary to WIS. STAT. §§ 346.63(1)(b) and 346.65(2)(am)2. Keenan-Becht filed motions seeking to suppress the blood results on the grounds that the officer lacked probable cause to conduct the PBT, the officer ordered rather than requested that he perform the PBT, and that without the PBT result, the officer did not have probable cause to arrest. Ackley was the only witness who testified at the suppression hearing. He testified that he had been a state trooper for five and one-half years, had specialized training, and had conducted fifty-seven prior OWI stops or arrests before stopping Keenan-Becht. Ackley testified about stopping Keenan-Becht for speeding, observing his watery and red eyes, the odor of intoxicants emanating from him, and conducting the field sobriety tests. He also testified that Keenan-Becht admitted he had been drinking alcohol, had come from a bar, and had a prior OWI conviction.

¶6    After the suppression hearing and supplemental briefing, the circuit court ruled that although the PBT was unlawful, the officer had probable cause to arrest even without reliance on the PBT. The circuit court found the time of day, the watery and red eyes, the odor of an intoxicant coming from Keenan-Becht, his admission to drinking alcohol, and the four clues on the horizontal gaze nystagmus field sobriety test provided sufficient probable cause to arrest.

¶7    The case proceeded to a jury trial, which resulted in a conviction on the prohibited alcohol concentration count. The circuit court sentenced Keenan-Becht to five days in jail, imposed a "Forfeiture/Fine," and ordered a twelve-month license revocation and installation of an ignition interlock device. The circuit court granted Keenan-Becht's motion to stay the sentence pending appeal. Keenan-Becht now appeals.

## II. DISCUSSION

¶8    Keenan-Becht contends the circuit court erred in denying his suppression motion as it relates to the issue of probable cause to arrest. He asserts that under the totality of the circumstances, the officer did not have probable cause to arrest him, and therefore, his arrest violated constitutional protections against unreasonable search and seizure.

¶9    When reviewing a suppression motion, the circuit court's findings of fact will be upheld unless they are clearly erroneous. *State v. Roberts*, 196 Wis. 2d 445, 452, 538 N.W.2d 825 (Ct. App. 1995). However, whether a set of facts constitutes probable cause is a question of law this court reviews de novo. *State v. Babbitt*, 188 Wis. 2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994). This court examines the issue of probable cause anew and without deference to the circuit court. *See id.* In deciding whether probable cause exists, this court looks at

4

whether the totality of the circumstances within the officer's knowledge at the time would lead a reasonable police officer to believe the defendant was operating a motor vehicle while under the influence of an intoxicant. *See State v. Nordness*, 128 Wis. 2d 15, 36-37, 381 N.W.2d 300 (1986). The objective facts before a police officer need not prove guilt beyond a reasonable doubt; rather, they are sufficient if they lead to the conclusion that a violation of the law is more than a mere possibility. *State v. Richardson*, 156 Wis. 2d 128, 148, 456 N.W.2d 830 (1990).

¶10 Whether probable cause exists is an objective test. *See id.* at 148. Probable cause exists if the totality of the circumstances "'would lead a reasonable police officer to believe that the defendant probably'" was driving under the influence. *See Nordness*, 128 Wis. 2d at 35 (citations omitted). In reviewing whether probable cause exists, courts may consider the officer's training and investigative experience. *State v. Wille*, 185 Wis. 2d 673, 683, 518 N.W.2d 325 (Ct. App. 1994).

¶11 Keenan-Becht contends that it was unreasonable to arrest him based solely on his red eyes, odor of alcohol, admission to drinking, having come from a bar, speeding at 2:00 a.m., and showing four of six clues on the HGN field sobriety tests. He says the officer lacked probable cause to believe he was breaking the law because so many other factors—such as only one clue on each of two other field sobriety tests, lack of slurred speech, and no suggestion that he had been swerving or otherwise driving erratically—indicate he was not driving under the influence. But probable cause only requires that the totality of the circumstances causes a reasonable officer to believe that Keenan-Becht was *probably* driving under the influence. Although the factors Keenan-Becht sets forth certainly can be considered in assessing whether probable cause exists, they

5

do not control the determination. Each case must be assessed based on the factors particular to that case. *See **State v. Mata***, 230 Wis. 2d 567, 572, 602 N.W.2d 158 (Ct. App. 1999).

¶12 Probable cause existed under the totality of the circumstances here based on Keenan-Becht's admission to drinking, the odor of alcohol emanating from his body, his red and watery eyes, speeding, the time of day (around bar time), and the observation of four clues on the HGN test.[4] Further, the officer knew Keenan-Becht had a prior OWI conviction, which is another factor an

---

[4] Keenan-Becht further contends this court should reverse the circuit court's suppression decision because he "passed" the other two field sobriety tests administered at the scene, the circuit court found the officer's testimony regarding these other two "passed" tests to be not credible, and a 2007 "robustness" study reported that observing only four clues on the HGN test is not definitive of a BAC of .08. *See* MARCELLINE BURNS, PH.D., NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., THE ROBUSTNESS OF THE HORIZONTAL GAZE NYSTAGMUS TEST 15 (2007), https://rosap.ntl.bts.gov/view/dot/1821. This court rejects Keenan-Becht's contentions.

First, this court, like the circuit court, did not rely on the other two field sobriety tests in assessing whether probable cause existed for the arrest. And, although this court accepts the circuit court's findings on credibility related to those two tests, the squad video in the Record is of limited value due to its poor quality, its tendency to freeze repeatedly, and its misaligned video and audio tracks. Second, Keenan-Becht's assertion that the robustness study suggested four clues on the HGN test may equate to only .06 BAC does not change this court's conclusion. As explained, the totality of the circumstances included several other factors, in addition to the four clues on the HGN test, to establish probable cause to arrest. Additionally, "Wisconsin has no requirement that police must perform field sobriety tests in order to determine whether probable cause exists that a person is operating a vehicle under the influence of alcohol." ***State v. Kennedy***, 2014 WI 132, ¶21, 359 Wis. 2d 454, 856 N.W.2d 834. "That [a defendant] successfully completed all of the properly administered field-sobriety tests does not … subtract from the common-sense view that [a defendant] may have had a blood-alcohol level that violated WIS. STAT. § 346.63(1), any more than innocent behavior automatically negates either probable cause or even the lower reasonable-suspicion standard[.]" ***State v. Felton***, 2012 WI App 114, ¶10, 344 Wis. 2d 483, 824 N.W.2d 871 (citation omitted). The relevant inquiry is whether the facts would lead a reasonable police officer to believe that a violation probably had occurred or was occurring. *See **Johnson v. State***, 75 Wis. 2d 344, 348-49, 249 N.W.2d 593 (1977). Although this may be a closer case than some, the officer had sufficient indicia to meet the probable cause standard.

officer may consider in the probable cause determination. *See **State v. Lange***, 2009 WI 49, ¶33, 317 Wis. 2d 383, 766 N.W.2d 551. The fact that Keenan-Becht did not display additional indicia of driving under the influence does not negate the existing indicia from which a reasonable police officer could conclude that Keenan-Becht probably was driving while under the influence of an intoxicant.

¶13 Keenan-Becht claims there could be an innocent explanation for his red, watery eyes and that a person is permitted to drive after drinking as long as his blood alcohol concentration is under the prohibited limit. This is true, but nevertheless, both of these indicia may be relied upon in forming probable cause. *See **State v. Tullberg***, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 ("We reaffirm that a law enforcement officer may consider bloodshot and glassy eyes to be one of several indicators of intoxication, even though such eye descriptors may have an innocent explanation."); ***Lange***, 317 Wis. 2d 383, ¶37 (admission of drinking "strengthens the existence of probable cause").

¶14 As our supreme court has often stated: "Drunk driving is indiscriminate in the personal tragedy of death, injury, and suffering it levies on its victims. It may transform an innocent user of a highway into a victim at any time—with no advance notice and no opportunity to be heard." ***Nordness***, 128 Wis. 2d at 33. Moreover, drunk driving

> is also a scourge on society: drunk driving exacts a heavy toll in terms of increased health care and insurance costs, diminished economic resources, and lost worker productivity. It is an affliction which produces no offsetting human or economic benefits; it engenders no positive human or economic incentive. It destroys and demoralizes personal lives and shocks society's conscience. It has no legitimate place in our society.

*Id.* at 33–34.

¶15     Police officers patrolling Wisconsin roads must make in-the-moment decisions, based on their training and experience, as to whether a driver probably is driving under the influence.    Determining whether a driver's level of intoxication is just over or just under the legal limit is one such decision officers must make in real time based on the circumstances in the moment.   Here, this court cannot conclude that under all the circumstances, Ackley's decision to arrest was objectively unreasonable.   Although Keenan-Becht certainly exhibited some behavior suggesting he was not driving under the influence, he also displayed multiple symptoms that could lead a reasonable police officer to conclude that he probably was driving under the influence.   A violation of the law was more than a mere possibility.   The circuit court did not err in denying Keenan-Becht's suppression motion.[5]

> *By the Court.*—Judgment affirmed.

This   opinion   will   not   be   published.    *See*   WIS.   STAT. RULE 809.23(1)(b)4.

---

[5] Keenan-Becht cites to two unpublished cases he believes offer persuasive value: *State v. Gonzalez*, No. 2013AP2585-CR, unpublished slip op. (WI App May 8, 2014), and *State v. Meye*, No. 2010AP336–CR, unpublished slip op. (WI App July 14, 2010).   Neither case applies.   *Gonzalez* held that, absent any controlling law suggesting otherwise, odor of an intoxicant alone does not support reasonable suspicion of intoxicated driving.   *Gonzalez*, No. 2013AP2585-CR, ¶18.   The *Gonzalez* court specifically noted that the officer did not observe any "physical indicators of intoxication, such as slurred speech or bloodshot eyes," and the defendant had not admitted to "consuming any alcoholic beverages."   *Id.*, ¶14.   In contrast, Keenan-Becht did have a physical indicator of intoxication—red, watery eyes—and he admitted to consuming alcoholic beverages.   Likewise, *Meye* does not support Keenan-Becht's claim that the officer lacked probable cause to arrest him.   *Meye* held that the odor of an intoxicant alone is insufficient to provide an officer with reasonable suspicion.   *Meye*, No. 2010AP336-CR, ¶1. Again, Keenan-Becht's case involves more indicia than the odor of an intoxicant.