COURT OF APPEALS
DECISION
DATED AND FILED

February 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2022AP186**

STATE OF WISCONSIN

Cir. Ct. No.  2018TR8068

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

NICHOLAS ALLEN PAULSON,

    DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Dunn County: CHRISTINA M. MAYER, Judge. *Affirmed*.

¶1      GILL, J.[1]   Nicholas Paulson appeals an order that imposed penalties after a jury found him guilty of operating a motor vehicle while intoxicated (OWI), as a first offense. Paulson argues that the circuit court should have granted

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

his motion to suppress evidence because he was arrested without probable cause. We conclude the court properly determined that law enforcement had probable cause to arrest Paulson. Accordingly, we affirm.

## BACKGROUND

¶2      At the suppression hearing, State Trooper Brett Boley testified that in the early morning hours of November 23, 2018, he was dispatched to a scene following a report that a passenger had jumped out of a moving vehicle and sustained injuries. Upon his arrival, Boley made contact with Paulson, who stated that he had called 911 after his wife jumped out of their vehicle while it was moving. Boley testified that upon making contact with Paulson, he observed that Paulson's speech was "thickly slurred" and that Paulson "stumbled and came close to falling over" when he stood up. Boley also "detect[ed] an odor of intoxicants" when he was "standing closest to" Paulson. He further noted that Paulson's eyes were "bloodshot and glassy."

¶3      Boley testified that after making his initial contact with Paulson, he looked inside Paulson's vehicle and saw a thirty-six pack of beer "sitting behind the front seats," with approximately twelve cans missing. Boley then asked Paulson whether he had been drinking alcohol. Paulson initially "appeared confused" about how much alcohol he had consumed, but he subsequently admitted to consuming "about six to twelve beers."

¶4      Boley then asked Paulson to perform field sobriety tests. Before conducting the tests, Boley asked whether Paulson had any physical defects or injuries, and Paulson responded that he "has some shrapnel in his back that occasionally causes him some pain."

2

¶5      Boley first had Paulson perform the horizontal gaze nystagmus (HGN) test, and he observed six out of six possible clues of impairment.  Boley then conducted the vertical gaze nystagmus test and observed that "vertical gaze nystagmus was present."  Boley next conducted the walk-and-turn (WAT) test, and he testified that Paulson displayed four out of eight clues of impairment.  Boley then asked Paulson to perform the one-leg-stand (OLS) test and noted no clues of impairment.

¶6      Next, Boley asked Paulson to recite the alphabet from the letter E to the letter P.  Paulson began "by stating E, F, P, [and] he then stopped and started back over at E and continued on until P."  Boley then asked Paulson to count backwards from sixty-four to forty-nine.  According to Boley, Paulson skipped over a number, said the number fifty-seven twice, and continued counting until the number forty-seven.

¶7      Boley testified that during the course of his duties as a law enforcement officer, he has observed people who were under the influence of intoxicants many times.  Based on his training and experience, "and everything [he] observed from the moment [he] first arrived on scene until the moment [he] took [Paulson] into custody," Boley formed the opinion that Paulson was impaired by intoxicants.  Boley further testified that he administered a preliminary breath test (PBT), the result of which was .198.  Thereafter, Boley placed Paulson under arrest.

¶8      At the end of Boley's direct examination, the State played portions of his squad car's dashboard camera video for the circuit court.  On cross-examination, Boley conceded that his administration of the HGN test did not comply with the National Highway Traffic Safety Administration (NHTSA)

Manual in certain respects. For instance, Boley admitted that during the HGN test, the stimulus "is supposed to be maintained at a distance of … 12 to 15 inches from the person's face." When defense counsel asserted that the video showed that the stimulus was "well beyond that distance," Boley responded, "Starting out, it would have been 12 to 15 inches but when you move it back and forth, because you're moving it from one side to the next side, going from here to here is going to increase the distance from somebod[y's] face."

¶9    Boley also acknowledged that when checking for a lack of smooth pursuit during the HGN test, the stimulus should be moved at a certain rate—specifically, "two seconds out, two seconds back to the center," for a total of four seconds. Boley conceded that when administering that portion of the HGN test to Paulson, he moved the stimulus approximately twice as quickly as he should have.

¶10    The circuit court issued an oral ruling denying Paulson's suppression motion. The court found that Boley noticed an odor of intoxicants coming from Paulson, that Paulson admitted to drinking, and that Boley observed that Paulson's eyes were bloodshot and glassy. Based on its review of the dashboard camera video, the court further found that Boley did not "follow[] exactly what the standards reflect" when administering the HGN test. The court reasoned, however, that field sobriety tests are observational tools to assist officers in determining whether there is probable cause to arrest. Thus, while Boley's failure to administer the HGN test in complete compliance with the NHTSA Manual "might have lessened the specific impact of the HGN test," the court concluded that Boley's observations during the test nevertheless provided "some evidence" to support a determination that there was probable cause to arrest Paulson for OWI.

4

¶11    The circuit court next found, based on its review of the video, that Paulson "step[ped] off the line" and "had a turn that was not according to instructions" during the WAT test. The court also stated that it "did make some observations while [Paulson] was doing the [OLS test] as far as it appeared to be some balance that would be concerning." The court further noted that Paulson made "a couple of stumbles in reciting the alphabet" and "a couple of small errors" when counting backwards.

¶12    Based on all of these factors, the circuit court concluded that Boley had probable cause to request a PBT and to arrest Paulson for OWI. The court therefore denied Paulson's suppression motion. The case subsequently proceeded to trial, and a jury found Paulson guilty of OWI. Paulson now appeals, arguing that the court erred by denying his suppression motion.[2]

## DISCUSSION

¶13    When reviewing a circuit court's decision on a motion to suppress evidence, we apply a two-step standard of review. *State v. Anderson*, 2019 WI 97, ¶19, 389 Wis. 2d 106, 935 N.W.2d 285. First, we uphold the circuit court's findings of fact unless they are clearly erroneous—that is, unless they are against the great weight and clear preponderance of the evidence. *Id.*, ¶20. Second, we independently review the application of constitutional principles to those facts. *Id.*

¶14    Here, Paulson argues that the circuit court should have granted his suppression motion because Boley lacked probable cause to arrest him for OWI.

---

[2] The Honorable Rod W. Smeltzer denied Paulson's suppression motion and presided over Paulson's jury trial. The Honorable Christina M. Mayer entered a final order imposing penalties after the jury found Paulson guilty of OWI.

5

To be lawful, an arrest must be based on probable cause. **State v. Kutz**, 2003 WI App 205, ¶11, 267 Wis. 2d 531, 671 N.W.2d 660. "Probable cause for arrest exists when the totality of the circumstances within the arresting officer's knowledge would lead a reasonable police officer to believe that the defendant probably committed a crime." **Id.** The information must be sufficient to lead a reasonable officer to believe that the defendant's involvement in a crime is more than a possibility, but it need not reach the level of proof beyond a reasonable doubt, nor must it show that guilt is more likely than not. **Id.** Instead, "[p]robable cause is a flexible, commonsense measure of the plausibility of particular conclusions about human behavior." **Id.**

¶15 We apply an objective standard in determining whether probable cause exists, and, accordingly, we are not bound by the arresting officer's subjective assessments or motivations. **Id.**, ¶12. We must "consider the information available to the officer from the standpoint of one versed in law enforcement, taking the officer's training and experience into account." **Id.** "When a police officer is confronted with two reasonable competing inferences, one justifying arrest and the other not, the officer is entitled to rely on the reasonable inference justifying arrest." **Id.**

¶16 In this case, the circuit court correctly concluded, based on the evidence introduced at the suppression hearing, that Boley had probable cause to arrest Paulson for OWI. The court credited Boley's testimony that Paulson's eyes were bloodshot and glassy and that Boley noticed an odor of intoxicants coming from Paulson. In addition, Paulson admitted to drinking six to twelve beers, and Boley noticed a thirty-six pack of beer with approximately twelve cans missing inside of Paulson's vehicle. Boley also testified that upon his initial contact with

6

Paulson, Paulson's speech was slurred and Paulson "stumbled and came close to falling over" when he stood up.

¶17    Paulson's performance on the field sobriety tests further supports a determination that Boley had probable cause to arrest him. Boley testified that he observed six out of six clues on the HGN test and four out of eight clues on the WAT test. He also testified that Paulson made mistakes during both the alphabet test and the counting backwards test. In addition, Boley administered a PBT, which registered a .198—significantly over the legal limit of .08.[3] The video also

---

[3] In his reply brief on appeal, Paulson asserts that we should not consider the PBT result in our probable cause analysis because Boley "had already formed an opinion that [Paulson] was under the influence" before administering the PBT. According to Paulson, "whether a preliminary breath [test] was or was not administered in the instant case, [Paulson] would have been arrested. Thus, the question is whether probable cause to arrest existed prior to that point."

Paulson cites no legal authority in support of his claim that the relevant question is whether probable cause to arrest existed before the PBT was administered. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."). Furthermore, Paulson's argument in that regard lacks merit. As noted above, probable cause is an objective test, and we are not bound by the arresting officer's subjective assessments or motivations. *State v. Kutz*, 2003 WI App 205, ¶12, 267 Wis. 2d 531, 671 N.W.2d 660. Consequently, whether Boley had made a subjective decision to arrest Paulson before administering the PBT is immaterial. The operative question is whether "the totality of the circumstances within the arresting officer's knowledge *at the time of the arrest* would lead *a reasonable police officer* to believe … that the defendant was operating a motor vehicle while under the influence of an intoxicant." *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986) (emphasis added). The totality of the circumstances at the time of Paulson's arrest included the PBT result.

Notably, Paulson does not develop any argument on appeal that Boley lacked probable cause to request a PBT. *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 316, 603 N.W.2d 541 (1999) (explaining that the requisite probable cause to request a PBT "refers to a quantum of proof greater than the reasonable suspicion necessary to justify an investigative stop … but less than the level of proof required to establish probable cause for arrest"). In the circuit court, Paulson argued that the court should not consider the PBT result because Boley did not "request" that Paulson submit to a PBT but instead gave the impression that Paulson was required to do so. Paulson does not renew this argument on appeal, however, and we therefore deem it abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

(continued)

shows that after the PBT was administered, but prior to his arrest, Paulson admitted that he was "probably over" the legal limit.

¶18 Based upon the evidence discussed above, we conclude that the totality of the circumstances within Boley's knowledge at the time of Paulson's arrest would have led a reasonable police officer to believe that Paulson probably committed the crime of OWI. *See id.*, ¶12; *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). Paulson's arguments to the contrary are unavailing.

¶19 First, Paulson argues that the circuit court "disregard[ed] … the pervasive and serious defects in the administration of the HGN test," which "undermines the credibility of [the court's] findings." Essentially, Paulson argues that because Boley did not administer the HGN test in complete compliance with the standards set forth in the NHTSA Manual, the court could not rely on Boley's testimony regarding the clues that he observed on that test. In Wisconsin, however, there is no requirement for strict compliance with the NHTSA Manual as a prerequisite for field sobriety tests to be used in determining whether probable cause existed to arrest an individual for OWI. *See generally City of West Bend v. Wilkens*, 2005 WI App 36, 278 Wis. 2d 643, 693 N.W.2d 324.

¶20 In *Wilkens*, the defendant argued that his PBT result and all postarrest evidence should be suppressed because the arresting officer did not comply with the NHTSA Manual when administering field sobriety tests and, without the field sobriety tests, the officer lacked probable cause to request a PBT

---

In summary, we reject the only argument that Paulson raises on appeal as to why we should not consider the PBT result in our probable cause analysis. Regardless, we note that even absent the PBT result, we would still conclude that Boley had probable cause to arrest Paulson for OWI based on the other evidence introduced at the suppression hearing.

and arrest the defendant. *Id.*, ¶¶1, 7, 12. We rejected this argument, reasoning that field sobriety tests "are merely observational tools that law enforcement officers commonly use to assist them in discerning various indicia of intoxication, the perception of which is necessarily subjective." *Id.*, ¶1. Consequently, we held that "the procedures the officer employed go to the weight of the evidence, not its admissibility" at a suppression hearing. *Id.* Thus, despite the defects in the officer's administration of the tests, "nothing precluded the … court from considering [the officer's] testimony about what he observed when he administered the [field sobriety tests]" when determining whether probable cause existed. *Id.*, ¶24. Similarly, in this case, nothing precluded the circuit court from considering Boley's testimony about his observations during the HGN test when determining whether there was probable cause for Paulson's arrest.

¶21 Paulson also argues that the circuit court's factual findings are clearly erroneous because the court relied on Boley's testimony, which was incredible for multiple reasons. A circuit court, when acting as the fact finder, is the ultimate arbiter of witness credibility. *State v. Verhagen*, 2013 WI App 16, ¶39 n.7, 346 Wis. 2d 196, 827 N.W.2d 891. "This is especially true because the [court] has the opportunity to observe the witnesses and their demeanor on the witness stand." *State v. Anson*, 2005 WI 96, ¶32, 282 Wis. 2d 629, 698 N.W.2d 776 (emphasis omitted) (citation omitted). Consequently, we must accept the court's credibility determinations "unless the testimony relied upon is incredible as a matter of law." *State v. Jacobs*, 2012 WI App 104, ¶17, 344 Wis. 2d 142, 822 N.W.2d 885.

¶22 Paulson contends that Boley's testimony was incredible based on discrepancies between his testimony about his administration of the HGN test and the dashboard camera video showing that test. For instance, Boley testified that

9

when looking for "nystagmus at maximum deviation," an officer is supposed to hold the stimulus at maximum deviation "for a minimum of four seconds." When asked whether he complied with that four-second minimum, Boley responded, "I believe the approximation on the video from when I watched it was right around four seconds." Paulson asserts that the video contradicts Paulson's testimony on this point. Be that as it may, Boley's failure to correctly recall during the suppression hearing the length of time that he held the stimulus at maximum deviation during the HGN test does not render the remainder of his testimony incredible as a matter of law.

¶23　Paulson also asserts that Boley's testimony was incredible because Boley testified that Paulson's speech was "thickly slurred." According to Paulson, an "objective review" of the dashboard camera video shows that this testimony was false. Based upon our review of the video, we agree with the State that Paulson's speech "does appear to be slurred or less than clear at times." As such, Boley's testimony on that point was not incredible as a matter of law.

¶24　Paulson next asserts that Boley's testimony was incredible because Boley acknowledged that Paulson reported having shrapnel in his neck and back that caused him pain when he turned, but Boley nevertheless counted Paulson's improper turn on the WAT test as a clue of impairment. We fail to see how Boley's counting of the improper turn as a clue renders his testimony incredible as a matter of law. Notably, Paulson cites a NHTSA instructor's guide, which states that law enforcement officers should "consider" a subject's physical injuries or impairments when administering field sobriety tests. Here, there is no evidence that Boley failed to "consider" the injuries that Paulson reported. To the contrary, Boley confirmed before administering the tests that Paulson's injuries did not affect his balance. Moreover, while Paulson told Boley that his injuries cause him

pain when turning, he did not mention being in pain at any point during the field sobriety tests. Under these circumstances, we reject Paulson's argument that Boley's testimony was incredible because he counted Paulson's improper turn as a clue of impairment despite Paulson's injuries.

¶25 Paulson also argues that there was no probable cause for his arrest because: (1) there was no testimony that Paulson misunderstood Boley or was otherwise confused; (2) there were no allegations of bad driving on Paulson's part; (3) Boley admitted that he did not observe any swaying or lack of coordination; (4) Boley did not observe any "orbiting" during the HGN test; (5) the clues that Boley noted on the WAT test were not significant enough to indicate impairment; (6) Paulson exhibited no clues on the OLS test; and (7) the dashboard camera video shows that Paulson's speech was not actually slurred. Paulson asserts that when these factors are taken together, they undercut any conclusion that Boley had probable cause to arrest Paulson for OWI.

¶26 We disagree. First, we have already rejected Paulson's contention that the dashboard camera video shows that Paulson's speech was not slurred. The remaining factors that Paulson mentions do not outweigh the other evidence discussed above that supports a determination that Boley had probable cause to arrest Paulson for OWI—namely, Paulson's bloodshot and glassy eyes; that Paulson smelled of intoxicants; Paulson's admission to drinking six to twelve beers; the open pack of beer inside Paulson's vehicle; Paulson's slurred speech; Paulson's stumbling during his initial contact with Boley; Boley's observations

during the HGN and WAT tests; Paulson's mistakes during the alphabet and counting backwards tests; and the PBT result.[4]

¶27 Paulson asserts that the alphabet and counting backwards tests do not "lend themselves to establishing probable cause to arrest" because they are not standardized field sobriety tests. However, Paulson fails to cite any legal authority in support of the proposition that a defendant's performance on nonstandardized field sobriety tests may not be considered when determining whether an officer had probable cause to arrest the defendant for OWI. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). To the contrary, case law shows that Wisconsin courts routinely consider defendants' performance on the alphabet and counting backwards tests when determining whether probable cause existed for an arrest or a PBT. *See, e.g.*, *State v. Colstad*, 2003 WI App 25, ¶25, 260 Wis. 2d 406, 659 N.W.2d 394 (alphabet test); *County of Dunn v. Newville*, No. 2018AP1167, unpublished slip op. ¶¶28, 36 (WI App Aug. 6, 2019) (counting backwards test).[5]

¶28 Finally, Paulson argues that "every person has a varying amount of redness in their eyes," that a person may smell of intoxicants without being intoxicated, and that it is not illegal to transport unopened alcoholic beverages in a vehicle in Wisconsin. Paulson is correct that each of these factors, standing alone, is not necessarily indicative of illegal behavior. As noted above, however, when

---

[4] Although the PBT result supports a determination that Boley had probable cause to arrest Paulson, as noted above, we would conclude that probable cause existed even without considering the PBT result. *See supra* note 3.

[5] An unpublished opinion that is authored by one judge and issued on or after July 1, 2009, may be cited for its persuasive value. WIS. STAT. RULE 809.23(3)(b).

the facts give rise to two competing reasonable inferences, one justifying arrest and the other not, an officer "is entitled to rely on the reasonable inference justifying arrest." *Kutz*, 267 Wis. 2d 531, ¶12. Here, taking into account all of the other circumstances discussed above, a reasonable officer could infer that Paulson's red and glassy eyes, the odor of intoxicants coming from his person, and the open pack of beer in his vehicle were evidence of intoxication.

¶29 On the whole, the totality of the circumstances within Boley's knowledge at the time of Paulson's arrest would have led a reasonable police officer to believe that Paulson had probably committed a crime—namely, OWI. *Id.*, ¶11. As such, probable cause existed for Paulson's arrest, and the circuit court did not err by denying Paulson's suppression motion.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.