# COURT OF APPEALS
# DECISION
# DATED AND FILED

## March 14, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1796**

Cir. Ct. No. **2022TR2265**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

ASIF AHMED,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for La Crosse County: GLORIA L. DOYLE, Judge. *Affirmed*.

¶1    KLOPPENBURG, P.J.[1] The La Crosse County circuit court determined, after a refusal hearing under WIS. STAT. § 343.305(9), that Asif

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Ahmed improperly refused to consent to provide a sample of his blood for a chemical test.[2]  On appeal, Ahmed argues that he properly refused to submit to a blood test because, based on the totality of the circumstances, the arresting officer lacked probable cause to believe that Ahmed was operating a motor vehicle while under the influence of an intoxicant (referred to for ease of reading as "operating a motor vehicle while intoxicated").  I reject Ahmed's argument and, therefore, affirm.

## BACKGROUND

¶2      The following facts are taken from the testimony given at the hearing by an officer with the La Crosse Police Department, which the court credited, and the officer's body camera video played at the hearing.

¶3      On October 2, 2022, at approximately 9:21 p.m., the officer was dispatched to conduct a welfare check on Bliss Road.  When the officer arrived at the scene, he was informed by another officer that Ahmed was originally lying on the ground with his motorcycle on the side of the road.  The testifying officer approached Ahmed and detected the odor of intoxicants coming from Ahmed's breath.  Ahmed said that he had drunk one beer in the morning that day.  Ahmed also said that he got into an accident with his motorcycle.

---

[2] Under WIS. STAT. § 343.305(9)(a), a person whose operating privilege was revoked after having refused to provide a sample of the person's breath, blood, or urine for a chemical test may request a "refusal hearing" to challenge the revocation on the basis that the person's refusal was proper.  *See* WIS. STAT. § 343.305(10)(a) (providing that a court shall order revocation if it determines that the person "improperly refused" to provide a sample).

Pertinent here, the statute variously refers to the refusal to provide a sample of a person's blood for a chemical test as the refusal to "permit the test," "take a test," and "submit to a test," as well as simply "refused the test."  WIS. STAT. § 343.305(9)(a).  In this opinion, I will use "refusal to submit to a blood test."

¶4    There were no witnesses to Ahmed's accident. Ahmed told the officer that "he was going around [a] curve and hit some gravel and put the bike down." Ahmed's explanation for how the accident occurred was "plausible." Ahmed spoke with a "somewhat thick accent" and the officer did not notice any problems with Ahmed's balance at the scene. Ahmed's eyes were not bloodshot or glassy.

¶5    The officer did not believe that he would smell alcohol if Ahmed only had one beer in the morning. He decided to have Ahmed perform standardized field sobriety tests. The officer learned how to administer the field sobriety tests in accordance with the protocol set forth by the National Highway Traffic Safety Association. The officer planned to "transport" Ahmed to the La Crosse City Hall. After calling his sergeant, he was advised that case law requires the officer to transport Ahmed to "the nearest location with a flat surface," which the officer determined was the Bluffside Tavern parking lot.

¶6    After arriving at the Bluffside Tavern parking lot, the officer administered the horizontal gaze nystagmus test on Ahmed.[3] The officer observed "six clues" of intoxication on this test. Specifically, the officer observed "lack of

---

[3] The horizontal gaze nystagmus test requires a person to stand with the person's feet together and arms down and follow the tip of a pen with the person's eyes as the officer moves the pen from one side to the other. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 298, 603 N.W.2d 541 (1999). The specially trained officer watches for six "clues" of intoxication, or three "clues" in each eye: (1) the lack of smooth pursuit, (2) distinct and sustained nystagmus at maximum deviation; and (3) onset of nystagmus prior to 45 degrees. National Highway Traffic Safety Admin., *DWI Detection and Standardized Field Sobriety Testing Refresher*, Session 3, 9 (2015), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/sfst_ig_refresher_manual.pdf.

smooth pursuit," "distinct sustained nystagmus held at maximum deviation," and "onset of nystagmus prior to 45 degrees."[4]

¶7      The officer asked Ahmed to perform the walk-and-turn test.[5]  The officer and a colleague agreed that the surface of the Bluffside Tavern parking lot was flat.  Ahmed disagreed.  The officer offered an alternative area in the parking lot to perform the walk-and-turn test.  Ahmed initially said that the new spot was more reasonable but later said that the surface was still not flat and not a reasonable surface on which to perform the walk-and-turn test.  When asked whether he was willing to perform the walk-and-turn test, Ahmed answered that he would do the test if the officer could transport him to another location with a flat surface.  The debate over whether the surface was flat continued for several minutes until the officer informed Ahmed that his continued insistence to be taken to another location would be understood as a refusal to perform the walk-and-turn test.  After Ahmed did not perform the walk-and-turn test at the Bluffside Tavern parking lot, the officer arrested him.

¶8      Following the arrest, the officer read the Informing the Accused form to Ahmed.  Ahmed consented to submit to a blood test.  Shortly thereafter,

---

[4] The officer testified that "lack of smooth pursuit" refers to a person's inability to smoothly follow a stimulus, such as a tip of a pen, with the person's eyes.  "Distinct sustained nystagmus held at maximum deviation" refers to the "jerkiness" of the eyes when looking to the side.  "Onset of nystagmus prior to 45 degrees" refers to the "jerkiness" in the eyes as the eyes follow a stimulus slowly moving towards 45 degrees.

[5] In administering the walk-and-turn test, also referred to as the heel-to-toe walking test, the officer instructs a person to walk nine steps on an imaginary line, heel to toe, with the person's arms down to the sides, and then to turn back and walk another nine steps on the same imaginary line.  *Renz*, 231 Wis. 2d at 297; National Highway Traffic Safety Admin., *DWI Detection and Standardized Field Sobriety Testing Refresher*, Session 3, 27 (2015), https://www.nhtsa.gov/sites/nhtsa.gov/files/documents/sfst_ig_refresher_manual.pdf.

Ahmed asked the officer what the consequences would be if he refused to submit to a blood test. The officer read Ahmed the Informing the Accused form a second time and Ahmed refused to submit to a blood test.

¶9 Ahmed requested a refusal hearing regarding his refusal to submit to a blood test. After considering the officer's testimony, the officer's body camera video, and the parties' briefs, the circuit court determined that Ahmed's refusal was improper based on its determination that the officer had probable cause to believe that Ahmed was operating a motor vehicle while intoxicated.

¶10 Ahmed appeals.

## DISCUSSION

### I. Wisconsin's implied consent statute

¶11 Wisconsin's implied consent law, WIS. STAT. § 343.305, provides that any person who drives or operates a motor vehicle on a public highway in Wisconsin is deemed to have given the person's "implied consent" to chemical testing of the person's blood, breath, or urine if the person is arrested for an operating while intoxicated-related offense. Sec. 343.305(2), (3)(a). A law enforcement officer who arrests a person for an operating while intoxicated-related offense and seeks chemical testing pursuant to the implied consent law is required to read the Informing the Accused script to the person. Sec. 343.305(4).

¶12 If the person refuses to submit to chemical testing, the person is informed that the State intends to immediately revoke the person's operating privileges. WIS. STAT. § 343.305(9)(a). The person may request a refusal hearing to challenge the revocation. Sec. 343.305(9)(a)4. The issues that a person may raise at a refusal hearing are limited to those set forth in § 343.305(9)(a)5. One of

5

the issues that may be raised is "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol … and whether the person was lawfully placed under arrest for violation of [an operating while intoxicated-related statute]." Sec. 343.305(9)(a)5.a. As to that issue, if the circuit court determines that probable cause existed, then the person "improperly refused" to submit to the test and the court shall order revocation. Sec. 343.305(10)(a).

## II. The officer had probable cause to believe that Ahmed was operating a motor vehicle while intoxicated

¶13 Ahmed argues that the circuit court erred in determining, based on the totality of the circumstances, that the officer had probable cause to believe that he was operating a motor vehicle while intoxicated.

¶14 "Application of the implied consent statute to an undisputed set of facts is a question of law" which this court reviews independently. *State v. Baratka*, 2002 WI App 288, ¶7, 258 Wis. 2d 342, 654 N.W.2d 875. "To the extent the circuit court's decision involves findings of evidentiary or historical facts, those findings will not be overturned unless they are clearly erroneous." *Id.*; *see* WIS. STAT. § 805.17(2) (A circuit court's "[f]indings of fact shall not be set aside unless clearly erroneous.").

¶15 The circuit court determined that the officer had probable cause to believe that Ahmed was operating a motor vehicle while intoxicated based on the following findings of fact: (1) Ahmed was involved in an accident while operating his motorcycle; (2) the officer smelled an odor of intoxicants coming from Ahmed; (3) the video from the officer's body camera showed that Ahmed

6

was "swaying, had slow or slurred speech and [was] uncooperative"; and (4) Ahmed refused to perform the field sobriety tests on a "safe, flat public spot in close proximity to" the scene of the accident.[6]

¶16    Ahmed disputes parts of the third and fourth findings of fact. As to the circuit court's finding that his speech was slurred, Ahmed argues that the officer testified that Ahmed "spoke with a somewhat thick accent" and, therefore, the officer's observation of slurred speech was premised on his bias. Regardless of whether the officer considered Ahmed's speech slurred based on Ahmed's accent, the court did not rely only on the officer's testimony. Instead, the court independently found that Ahmed's speech was slow or slurred after watching the officer's body camera video. It is within the circuit court's discretion to corroborate the officer's testimony with its own observation of the video. *State v. Walli*, 2011 WI App 86, ¶17, 334 Wis. 2d 402, 799 N.W.2d 898 (when evidence in the record consists of disputed testimony and a video recording, appellate courts will apply the clearly erroneous standard when reviewing the circuit court's findings of fact based on that recording). Therefore, Ahmed fails to show that the court's finding of Ahmed's slow and slurred speech is clearly erroneous.

¶17    As to the circuit court's finding that Ahmed refused to perform the walk-and-turn test, Ahmed argues that he merely asked to be moved to a more level surface. However, the court found that the parking lot was a sufficiently flat

---

[6] The circuit court also relied on an averment in the officer's search warrant affidavit for the blood draw that Ahmed had bloodshot and glassy eyes, contrary to the officer's testimony, in part because the officer attested that the affidavit was completed accurately. I do not rely on this averment in this opinion.

surface on which to perform the test. Ahmed fails to show that the court's finding that Ahmed refused to do the test on a flat surface is clearly erroneous.

¶18 Having determined that Ahmed fails to show that the circuit court's factual findings are clearly erroneous, I next address the legal question of whether there was probable cause to believe that Ahmed was operating a motor vehicle while intoxicated based on those findings. *See State v. Woods*, 117 Wis. 2d 701, 710, 345 N.W.2d 457 (1984) (whether there was "probable cause … is a question of law that is subject to independent review on appeal").

¶19 At a refusal hearing, "[p]robable cause, although not easily reducible to a stringent, mechanical definition, generally refers to 'that quantum of evidence which would lead a reasonable police officer to believe that the defendant probably committed a crime.'" *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986) (quoted source omitted). In the context of a refusal hearing, "[p]robable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe … that the defendant was operating a motor vehicle while under the influence of an intoxicant." *Id.* This court is not bound by an officer's "subjective assessment or motivation." *State v. Kasian*, 207 Wis. 2d 611, 621, 558 N.W.2d 687 (Ct. App. 1996).

¶20 Here, the information available to the officer at the time of arrest would lead a reasonable police officer to believe that Ahmed had been operating a motor vehicle while intoxicated. As found by the circuit court, Ahmed was involved in an accident when riding his motorcycle, the officer detected an odor of intoxicants from Ahmed, Ahmed was swaying and had slow or slurred speech, and Ahmed was uncooperative. *See State v. Kennedy*, 2014 WI 132, ¶22, 359 Wis. 2d

454, 856 N.W.2d 834 ("[F]actors sufficient to support a finding of probable cause have included … an odor of intoxicants, and slurred speech, together with a motor vehicle accident."); *State v. Blatterman*, 2015 WI 46, ¶¶37-38, 362 Wis. 2d 138, 864 N.W.2d 26 (refusal to follow orders supports probable cause); *State v. Babbitt*, 188 Wis. 2d 349, 359-60, 525 N.W.2d 102 (Ct. App. 1994) (refusal to submit to field sobriety tests supports probable cause).

¶21    Ahmed argues that the officer did not observe Ahmed operating his motorcycle in a reckless or erratic manner and that it was plausible that Ahmed fell off his motorcycle as a result of "the environmental conditions." As noted, the officer testified that Ahmed said he was going around a "curve and hit some gravel" and fell off his motorcycle and that that was a plausible explanation. However, the probability that the accident was partially or completely a result of Ahmed hitting gravel while going around a curve does not negate the fact that Ahmed had an accident.

¶22    Ahmed also argues that the mere existence of odor of intoxicants is not sufficient to establish probable cause. To support his argument, Ahmed cites *State v. Meye*, No. 2010AP336-CR, unpublished slip op. (WI App July 14, 2010). In *Meye*, this court determined that the officer lacked reasonable suspicion because the sole evidence presented by the State was that the officer smelled alcohol from the defendant's vehicle during an investigative stop, and "[t]he weakness of this [evidence] is exacerbated by the fact that the officer was not sure from which person the odor of alcohol was coming from or if it was coming from both persons [in the vehicle]." *Id.*, ¶¶1, 3, 6, 9. By contrast, in this case, the officer had several observations of intoxication other than the odor of intoxicants—namely, slow or slurred speech, swaying, an uncooperative attitude, and the motorcycle accident—and Ahmed was the only source of the odor of

intoxicants and the only driver of the motorcycle. Therefore, *Meye* does not support Ahmed's argument.

¶23 Ahmed also cites *State v. Gonzalez*, No. 2012AP1818-CR, unpublished slip op. (WI App Dec. 3, 2014). In that case, this court determined that the officer who stopped the defendant for a defective headlight unlawfully extended her detention by conducting field sobriety tests without reasonable suspicion after detecting an odor of alcohol from her. *Id.*, ¶1-2. Here, the officer approached Ahmed initially because Ahmed had been in an accident with his motorcycle, immediately detected an odor of intoxicants from him, and then observed him swaying, having slow and spurred speech, and being uncooperative before arresting him. The information available to the officer here is different from, and more extensive than, that available to the officer in *Gonzalez*. Thus, *Gonzalez* also does not support Ahmed's argument.

¶24 Ahmed also argues that the officer's deficient administration of the horizontal gaze nystagmus test rendered the test result invalid and not relevant to the probable cause determination. However, Ahmed does not cite any evidence in the record to support his assertion that the horizontal gaze nystagmus test was done improperly, contrary to the officer's training. In Ahmed's statement of facts, he asserts that the officer improperly administered the horizontal gaze nystagmus test in three ways: the officer (1) failed to take an initial pass for clues of intoxication for "a total of four seconds for each eye"; (2) failed to "hold the stimulus at maximum for a minimum period of [four seconds]" when assessing distinct and sustained nystagmus at maximum deviation; and (3) moved the stimulus too quickly. These assertions are accompanied by citations to specific portions of the hearing transcript and officer's body camera video. However, the portions of the record he cites do not support his assertions. Additionally, we have

previously recognized that field sobriety tests are not scientific tests but merely "observational tools that law enforcement officers commonly use to assist them in discerning various indicia of intoxication." *City of West Bend v. Wilkens*, 2005 WI App 36, ¶1, 278 Wis. 2d 643, 693 N.W.2d 324. The administration of field sobriety tests does not mean that observations of intoxication by officers "are based on scientific phenomena rather than plain common sense." *Id.*, ¶21.

¶25 Moreover, even absent the administration and results of the horizontal gaze nystagmus test, all of the officer's other observations sufficiently supported probable cause to believe that Ahmed was operating a motor vehicle while intoxicated. That is, Ahmed also displayed signs of intoxicated driving including his slow or slurred speech, odor of intoxicants, refusal to participate in the remaining field sobriety tests, and having been in an accident. *See Kasian*, 207 Wis. 2d 611, 622 (A "one-vehicle accident," "slurred speech," and "strong odor of intoxicants" are, taken together, "evidence constitut[ing] probable cause to believe that [the defendant] had operated the vehicle while intoxicated."); *Babbitt*, 188 Wis. 2d at 359-60 (refusal to perform a field sobriety test is "indicative of [the defendant's] consciousness of guilt" that the defendant is intoxicated and, therefore, may be used to establish probable cause).

¶26 Finally, Ahmed argues that it was reasonable for him to "request that he be transported to the location to which he originally *agreed* to be taken from the location to which he *never consented* to go," and that that request did not constitute a refusal to perform the walk-and-turn test as a factor supporting probable cause. However, Ahmed does not cite to any authority to support the proposition that a person does not refuse to perform a field sobriety test if the person does not consent to the location for the test.

11

¶27    In sum, the information available to the officer at the time of Ahmed's arrest would lead a reasonable officer to believe that Ahmed had operated a motor vehicle while intoxicated.  Therefore, Ahmed improperly refused to submit to a blood test.

## CONCLUSION

¶28    For the reasons stated, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.