COURT OF APPEALS
DECISION
DATED AND FILED

October 23, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP483**

STATE OF WISCONSIN

Cir. Ct. No. 2024TR4327

IN COURT OF APPEALS
DISTRICT IV

IN THE MATTER OF THE REFUSAL OF JASON DANIEL HULL:

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JASON DANIEL HULL,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dodge County: MARTIN J. DE VRIES, Judge. *Affirmed.*

¶1 KLOPPENBURG, J.[1] After a refusal hearing under WIS. STAT. § 343.305(9), the Dodge County circuit court found that Jason Daniel Hull improperly refused to consent to provide a sample of his blood for a chemical test. On appeal, Hull argues that the court erred for two reasons. Specifically, Hull argues that, based on the totality of the circumstances, the responding sergeant lacked probable cause to believe that Hull had operated a motor vehicle while under the influence of an intoxicant (referred to for ease of reading as "operated a motor vehicle while intoxicated"). Hull also argues that his response to the sergeant did not constitute a refusal to submit to chemical testing. I reject Hull's probable cause argument because the record establishes that the responding sergeant had probable cause to believe that Hull had operated a motor vehicle while intoxicated. I do not address Hull's argument that he did not refuse to submit to chemical testing because Hull forfeited it by not raising it in the circuit court. Accordingly, I affirm.

## BACKGROUND

¶2 The following facts are taken from the testimony at the refusal hearing by the responding sergeant of the Dodge County Sheriff's Office, which the circuit court credited.

¶3 Sometime before midnight on December 14, 2024, the sergeant was dispatched to respond to a report of "a male and female fighting." This report was made by A.B., and A.B.'s phone call was determined to have been placed "on the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

roadway on Blackhawk Trail."[2]  The sergeant and two deputies separately began to drive to the site of the call, when dispatch received a second call from A.B.'s residence.  The sergeant arrived at the residence after one deputy had already arrived, and made contact with Hull inside the front door of the house.  The sergeant estimated that it "would have been roughly a half an hour" between the time that Hull arrived at the residence and the time that any law enforcement personnel arrived.  The sergeant "observed items thrown all throughout the house," and observed that Hull had "a cut on his face," "bloodshot, glassy eyes, … an odor of intoxicants coming from his person," and "[a]t times … delayed and slurred" speech.  Neither the sergeant nor the two deputies on scene observed Hull drinking anything.

¶4      When the sergeant began questioning Hull about the incidents prompting the 911 calls, Hull said that he "doesn't answer questions" but that A.B. had "destroyed stuff and broke something inside of his truck."  The sergeant asked if he had been drinking, and Hull said again that he "doesn't answer questions."  The sergeant accompanied Hull to inspect Hull's truck and saw that the rear-view mirror was "missing from the truck."  Hull "immediately pointed at the driver seat and said, 'Look at the driver seat location, I wouldn't be able to fit there.'"

¶5      After inspecting the truck, the sergeant spoke with A.B.  The sergeant also spoke with one of the deputies, who relayed what A.B. had told him.  The following information comes from A.B.'s statements to the sergeant and

---

[2] To protect the witness's privacy, we refer to her using initials that do not correspond to her own.  *Cf.* WIS. STAT. RULE 809.86(4) (explaining rule regarding identifying victims by initials or other appropriate designation).

deputy. A.B. said that she and Hull left a tavern in Fox Lake, that Hull was driving, and that she and Hull "got into a disturbance while the [truck] was driving on Blackhawk Trail," at which time Hull pulled the truck over and A.B. called 911. A.B. said that Hull then got out of the truck, "walked home to the residence and then he drove back on [a] UTV" (utility terrain vehicle). When Hull returned to the truck on the UTV, A.B. "got in the driver seat" of the truck and drove it "back to the residence," while Hull drove back on the UTV.

¶6    The sergeant saw the UTV parked in the driveway of the residence. The sergeant "attempted to" talk to Hull "about his operation of the [truck]," but Hull "repeatedly" told the sergeant that he "doesn't answer questions and didn't want to incriminate himself." The sergeant then performed a Department of Transportation check on Hull and learned that he had a .02 blood alcohol content (BAC) restriction, that "he was required to have an ignition interlock device installed in any vehicle he operated," and that he had one prior conviction for operating a motor vehicle while intoxicated.

¶7    The sergeant asked Hull to perform field sobriety tests because "[i]t became very clear to [the sergeant] that [Hull] was pointing out the seat position right away to draw [the sergeant's] attention away from [Hull] driving"; because Hull's bloodshot, glassy eyes, at times slurred speech, and the odor of intoxicants led the sergeant to believe that Hull had consumed alcohol; and because it does not "require a large amount of alcohol to reach a .02 [BAC]." The sergeant also relied on A.B.'s statement that Hull had been driving after they left the tavern and before she made the first 911 call. Hull refused to perform field sobriety tests or to provide a preliminary breath test, and the sergeant placed him under arrest for operating a motor vehicle while intoxicated. Neither the sergeant nor the two deputies observed Hull driving, but Hull "never outright told [the sergeant] that he

did not drive" when the sergeant questioned him, and the sergeant credited A.B.'s statement regarding Hull driving both the truck and the UTV after leaving the tavern.

¶8 After placing Hull under arrest, the sergeant read the Informing the Accused form "word for word" to Hull. The Informing the Accused form states that the law enforcement agency wants to chemically test samples of the person's breath, blood, or urine to determine the concentration of alcohol in the person's system, and that a refusal to submit to chemical testing will result in the revocation of the person's operating privileges. WIS. STAT. § 343.305(4). Hull responded with "something to the effect of I don't answer questions," which the sergeant took to mean "no," and the sergeant indicated that response on the form.

¶9 Hull requested a refusal hearing regarding the propriety of his refusal to submit to chemical testing, and the hearing was held on February 21, 2025. At the hearing, Hull argued that his refusal "was reasonable" because the sergeant did not have probable cause that Hull had been operating a motor vehicle while intoxicated. The circuit court determined that Hull's refusal was improper because the sergeant had probable cause to believe that Hull had operated a motor vehicle while intoxicated.

¶10 Hull appeals.

## DISCUSSION

¶11 As stated, Hull argues that the circuit court erred in determining that the sergeant had probable cause to believe that he had operated a motor vehicle while intoxicated, and that the court erred in finding that he had refused chemical testing. I conclude that the sergeant had probable cause to believe that Hull had

5

operated a motor vehicle while intoxicated and that Hull forfeited his refusal argument by not raising the issue in the circuit court. I first set forth the applicable standard of review and summarize the applicable statutory law, and then address Hull's arguments in turn.

## I. Standard of Review

¶12     This court will uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Baratka*, 2002 WI App 288, ¶7, 258 Wis. 2d 342, 654 N.W.2d 875. Whether those facts constitute probable cause is a question of law that this court reviews de novo. *State v. Popke*, 2009 WI 37, ¶10, 317 Wis. 2d 118, 765 N.W.2d 569.

## II. Wisconsin's Implied Consent Statute

¶13     Wisconsin's implied consent law, WIS. STAT. § 343.305, provides that any person who drives or operates a motor vehicle on a public highway in Wisconsin is deemed to have given the person's "implied consent" to chemical testing of the person's blood, breath, or urine if the person is arrested for an operating while intoxicated-related offense. § 343.305(2), (3)(a). A law enforcement officer who arrests a person for an operating while intoxicated-related offense and seeks chemical testing pursuant to the implied consent law is required to read the Informing the Accused form to the person. § 343.305(4).

¶14     If the person refuses to submit to chemical testing, the person is informed that the State intends to immediately revoke the person's operating privileges. WIS. STAT. § 343.305(9)(a). The person may request a refusal hearing to challenge the revocation. § 343.305(9)(a)4. The issues that a person may raise at a refusal hearing are limited to those set forth in § 343.305(9)(a)5. Pertinent

here, those issues include: "[w]hether the officer had probable cause to believe the person was driving or operating a motor vehicle while under the influence of alcohol … and whether the person was lawfully placed under arrest for violation of" an operating while intoxicated-related statute; and "[w]hether the person refused to permit the test." § 343.305(9)(a)5.a., c. If the circuit court determines that probable cause existed and that the person refused to submit to the test, then the refusal was "improper" and the court shall order revocation. § 343.305(10)(a), (b).

### III.  Probable Cause

¶15    Hull argues that the circuit court erred in determining, based on the totality of the circumstances, that the sergeant had probable cause to believe that Hull had operated a motor vehicle while intoxicated. Specifically, Hull argues that "[i]f Mr. Hull operated a motor vehicle, there is nothing to support that Mr. Hull was under the influence of any intoxicants when doing so."

¶16    In the context of a refusal hearing, "[p]robable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe … that the defendant was operating a motor vehicle while under the influence of an intoxicant." *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). "'The evidence need not reach the level of proof beyond a reasonable doubt or even that guilt is more likely than not.'" *Id.* (quoted source omitted).

¶17    Here, the information available to the sergeant at the time of arrest would lead a reasonable police officer to believe that Hull had been operating a motor vehicle while intoxicated. As explicitly or implicitly found by the circuit court, that information includes the following. A.B. told officers that Hull had

been driving the truck after the two left the tavern, when A.B. first called law enforcement, and that Hull drove the UTV to the truck and back to the residence, when A.B. again called law enforcement. When the sergeant contacted Hull at the residence "roughly a half an hour" after Hull returned to the residence, the sergeant smelled an odor of intoxicants coming from Hull, and Hull had delayed and slurred speech as well as glassy and bloodshot eyes. *See* *State v. Kennedy*, 2014 WI 132, ¶22, 359 Wis. 2d 454, 856 N.W.2d 834 (odor of intoxicants, slurred speech, and bloodshot eyes are factors that support a finding of probable cause). In addition, Hull had a prior conviction for operating a motor vehicle while intoxicated and was subject to a .02 BAC restriction, and Hull refused to perform field sobriety tests or a preliminary breath test. *See* *State v. Blatterman*, 2015 WI 46, ¶36, 362 Wis. 2d 138, 864 N.W.2d 26 (prior convictions for operating a motor vehicle while intoxicated may support probable cause); *State v. Babbitt*, 188 Wis. 2d 349, 359-60, 525 N.W.2d 102 (Ct. App. 1994) (refusal to submit to field sobriety tests may support probable cause).

¶18 Taken together, the circumstances known to the sergeant at the time of arrest, along with reasonable inferences drawn from those circumstances, suffice to support a reasonable officer's belief that Hull had operated a motor vehicle while intoxicated.

¶19 Hull argues that the State must "not simply establish that Mr. Hull was impaired when they made contact, but … also establish probable cause that Mr. Hull was impaired at the time he operated a motor vehicle." This proposition is sound, but, as explained above, the sergeant did have probable cause to believe that Hull had operated the truck while intoxicated based on the totality of the circumstances, including A.B.'s statement that Hull drove the truck after they left the tavern, the timing of the sergeant's contact with Hull after the driving reported

by A.B., and the signs of intoxication exhibited by Hull and observed by the sergeant.

¶20     Hull also argues that the sergeant did not get the information directly from A.B. and instead heard it from one of the deputies, that some of what Hull told the sergeant was true, and that the sergeant never asked Hull if he had been drinking after he allegedly drove. I do not consider these arguments because Hull makes them for the first time in his reply brief. *See* ***Bilda v. County of Milwaukee***, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 ("It is a well-established rule" that we generally "do not consider arguments raised for the first time in a reply brief.").

¶21     In sum, the sergeant had probable cause to believe that Hull operated a motor vehicle while intoxicated.

## IV.  Refusal

¶22     "The implied consent law does not require a verbal refusal." ***State v. Reitter***, 227 Wis. 2d 213, 234, 595 N.W.2d 646 (1999). Rather, "'uncooperative'" conduct or conduct that prevents an officer from administering the test is a refusal. ***Id.*** (quoted source omitted). Here, the circuit court determined that, when Hull responded to the sergeant's request that Hull submit to chemical testing by saying, "I don't answer questions," Hull refused the chemical testing.

¶23     Hull argues that his choice not to answer the sergeant's questions did not constitute a refusal to submit to chemical testing. More specifically, Hull argues that he "refused to answer questions" but that this was not a refusal to submit to chemical testing because his silence was "an assertion of his right to not self-incriminate." I do not address this argument because Hull forfeited it by not

raising it in the circuit court, and he fails to provide a persuasive reason that I should entertain the argument despite his failure to preserve it in the circuit court. *See State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 ("The party who raises an issue on appeal bears the burden of showing that the issue was raised before the circuit court[,]" and "[i]ssues that are not preserved at the circuit court … generally will not be considered on appeal.").

## CONCLUSION

¶24     For the reasons stated, the judgment of the circuit court is affirmed.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.